Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1690 | **DATE** | 7/28/2003 |
| **CASE TITLE** | M Credit, Inc. vs. Cadlerock, L.L.C., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: We grant the Cadle Companies' motion to dismiss and deny M Credit's motion (10-1) to enjoin prosecution of the Ohio action as moot. The status hearing set for 7/31/03 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | JUL 31 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 21 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/28/2003 date mailed notice | |
| GL | courtroom deputy's initials | | GL mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED
JUL 3 1 2003

| | |
|---|---|
| M CREDIT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03 C 1690 |
| ) | |
| CADLEROCK, L.L.C, ) | |
| CADLEROCK PROPERTIES, L.L.C., ) | |
| CADLEROCK JOINT VENTURE, L.P., ) | |
| and THE CADLE COMPANY, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff M Credit, Inc.[1] ("M Credit") has filed a declaratory judgment action against Defendants CadleRock, L.L.C., CadleRock Properties, L.L.C., CadleRock Joint Venture, L.P., and The Cadle Company (collectively, the "Cadle Companies"). Presently before us is the Cadle Companies' motion to dismiss M Credit's action. Also before us is M Credit's motion to enjoin prosecution of the Cadle Companies' complaint against M Credit in the United States District Court for the Northern District of Ohio. For the reasons set forth below, we grant the Cadle Companies' motion and deny M Credit's motion as moot.

### I. BACKGROUND

On August 18, 1999, M Credit sent a proposal letter ("Proposal Letter" or "Letter") to the Cadle Company regarding CadleRock Joint Venture's interest in financing. *See* Compl., Ex. 1. The Proposal Letter stated that M Credit "would consider establishing a three (3) year credit facility . . . with an initial maximum commitment of $25,000,000," which M Credit could, at its discretion, expand by up to an

---

[1] M Credit was formerly known as Transamerica Business Credit Corporation.



additional $25,000,000 for a total of $50,000,000. The Letter indicated that M Credit, in its sole discretion, could extend the facility beyond the initial three-year term and would so notify the borrower six months prior to the end of that three-year term.[2] The Letter stated that it "is not intended to and does not create any binding legal obligation on the part of [M Credit] or the Borrower and no obligation, express or implied . . . is intended." Compl., Ex. 1 at 6. Furthermore, the Letter provides that it "is not, and is not to be construed as, a commitment, offer, agreement in principle or agreement ("Commitment") by [M Credit] to provide financing." *Id.* The Cadle Company signed and returned the letter to M Credit on August 19, 1999.

On December 16, 1999, M Credit, as Lender, entered into a Loan and Security Agreement ("Loan Agreement" or "Agreement") with CadleRock and CadleRock Properties, as Borrowers. *See* Compl., Ex. 2. Under the Agreement, M Credit would establish certain credit facilities, pursuant to which M Credit could, in its discretion, make one or more term loans to the Borrowers. The Agreement provided that the maximum facility amount would be $25,000,000, unless M Credit, in its sole discretion, increased that amount to $50,000,000.

The Loan Agreement stipulated that it would expire on December 15, 2002 unless either M Credit or CadleRock and CadleRock Properties exercised an option to extend the term for an additional year. Upon the Agreement's expiration, "all of the Obligations shall be immediately due and payable and Lender shall have no obligation to make any Term Loans or other extensions of credit to or for the benefit of Borrowers." *Id.* at §2.8(d). The Loan Agreement stated that it and loan documents referenced therein "EMBODY THE ENTIRE AGREEMENT BETWEEN THE PARTIES AND SUPERSEDE ALL

---

[2]The Proposal Letter indicates that it and the proposed financing it describes were "intended to be governed by and construed in accordance with Illinois law." Compl. Ex. 1 at 6.

PRIOR AGREEMENTS AND UNDERSTANDINGS, IF ANY, RELATING TO THE SUBJECT MATTER HEREOF."[3] *Id.* at §10.16 (emphasis in original).

M Credit made numerous loans for millions of dollars pursuant to the Loan Agreement. Neither party exercised the option to extend the Loan Agreement, allowing the Facilities to terminate on December 15, 2002. By letter dated March 4, 2003, Daniel C. Cadle, on behalf of the Cadle Companies, made a written demand that M Credit immediately lend CadleRock and CadleRock Properties an additional $25,000,000. *See* Compl., Ex. 3. The Cadle Companies promised to file suit if M Credit failed to meet their demands. The Cadle Companies explained:

> By this letter, CadleRock, L.L.C. and CadleRock Properties, L.L.C. make demand on [M Credit] to perform under the August 18, 1999 letter and the December 16, 1999 Loan Agreement, and lend the sum of $25,000,000 to these companies immediately.
>
> If [M Credit] refuses this demand, then we are prepared to proceed to court. Please see the enclosure (without exhibits) to this letter.
>
> Please advise as to your intentions on receipt of this letter.

The enclosure to which the Cadle Companies' letter referred was a draft complaint bearing the caption "United States District Court for the Northern District of Ohio." *See* Mot. Dismiss. The fourteen-count draft complaint set forth allegations that M Credit acted in bad faith and breached loan agreements with the Cadle Companies. The draft complaint requested actual damages in excess of $75,000 and that M Credit specifically perform under the Proposal Letter to lend not less than $25,000,000 to the Cadle Companies.

---

[3]Section 10.12 of the Loan Agreement, attached to M Credit's complaint as Exhibit 2, expressly provides that it was made under and governed by Illinois law. The Cadle Companies irrevocably submitted to jurisdiction in the state and federal courts in Illinois, and venue in Cook County, Illinois. M Credit could, in its sole discretion, choose venue in any other state in a court of competent jurisdiction.

On March 7, 2003, M Credit filed a declaratory judgment action against the Cadle Companies in this Court. The action seeks a judicial declaration that M Credit does not have a present obligation to lend money to the Cadle Companies. On April 4, 2003, the Cadle Companies filed a fourteen-count complaint against M Credit in the United States District Court for the Northern District of Ohio. *See* Mot. Dismiss, Ex. D. The complaint alleges that M Credit acted in bad faith and breached the Loan Agreement with the Cadle Companies by failing to approve certain term loans the Cadle Companies requested. The Cadle Companies request for relief includes actual damages in excess of $75,000 and M Credit's specific performance under the Proposal Letter to lend the Cadle Companies not less than $25,000,000.

## II. ANALYSIS

The question presented by the Cadle Companies' motion is whether we should exercise jurisdiction over M Credit's claim for declaratory relief. It is well settled that, as a federal court, we have the discretion to decline to hear an action for declaratory relief, even though it is within our jurisdiction to do so. *See Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942); *see also Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987). We must determine whether exercising jurisdiction would be consistent with the purposes of the Declaratory Judgment Act ("Act"), 28 U.S.C. §2201. *See Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1168 (7th Cir. 1965). The purpose of the Act "is to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication, without waiting until his adversary should see fit to begin suit, after damage has accrued." *Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1994) (internal quotations and citations omitted).

As the *Tempco* Court explained, the Act contemplates two "related but distinct fact situations" in which declaratory relief should be made available:

4

> (1) The controversy has ripened to a point where one of the parties could invoke a corrective remedy (i.e. a suit for damages or an injunction) but has not done so; and
>
> (2) Although the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision. 819 F.2d at 749.

The suit before us falls within the first category. At the time M Credit filed this action, the Cadle Companies were in a position to commence a suit, but had not yet done so. In this situation, a declaratory judgment prevents "one party from continually accusing the other, to his detriment, without allowing the other to secure an adjudication of his rights by bringing suit." *Id.* at 749.

Here, however, the Cadle Companies have not "continually" accused M Credit to its detriment. The Cadle Companies' March 4, 2003 letter was the first and only occasion in which the Cadle Companies notified M Credit of the dispute regarding the scope and duration of M Credit's obligations under the Proposal Letter and Loan Agreement. The Cadle Companies requested that M Credit advise them as to its intentions upon receipt of the letter. The letter indicated that the Cadle Companies were prepared to proceed to court in the United States District Court for the Northern District of Ohio if M Credit refused the demand. Attached to the letter was a draft fourteen-count complaint against M Credit alleging breach of contract and bad faith. Thus, the Cadle Companies were not accusing M Credit of wrongdoing without affording it an opportunity to adjudicate its rights. Indeed, it appears to us that M Credit filed its action not to "avoid the accrual of avoidable damages," but rather to deprive the Cadle Companies of the opportunity to file its suit in the forum of its choice. *E. Edelmann & Co. v. Triple-A Specialty Co.*, 88 F.2d 852, 854 (7th Cir. 1937). As discussed below, the Seventh Circuit expressly disfavors such a preemptive action.

Generally, when suits involving the same parties, facts, and issues are filed in two federal districts, the first case filed takes priority. *See Eli's Chicago Finest, Inc. v. The Cheesecake Factory,*

*Inc.*, 23 F.Supp.2d 906, 908 (N.D. Ill. 1998) (citation omitted). However, the Seventh Circuit has never strictly applied the "first in time" rule. *See Tempco*, 819 F.2d at 750; *see also Chicago Furniture Forwarding Co. v. Bowles*, 161 F.2d 411, 412 (7th Cir. 1947). Furthermore, the Seventh Circuit has expressly disfavored applying the rule where, as here, the declaratory judgment action is filed first in anticipation of litigation by the other party. *See Nucor*, 28 F.3d at 577; *Tempco*, 819 F.2d at 750; *Eli's Chicago Finest*, 23 F.Supp.2d at 908; *Natural Gas Pipeline Co. of America v. Union Pacific Resources Co.*, 750 F.Supp. 311, 313-314 (N.D. Ill. 1990). As the Seventh Circuit has explained, "a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed and the case allowed to proceed in the usual way." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th Cir. 1993) (citation omitted).

M Credit insists that we not dismiss its declaratory judgment action because it aims to resolve an issue not raised in the Cadle Companies' lawsuit – whether M Credit has a *present* obligation to make a new $25,000,000 loan to the Cadle Companies. M Credit concludes that its lawsuit would therefore better settle the controversy between the parties. In support of its conclusion, M Credit cites to *Nucor Corporation v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572 (7th Cir. 1994), in which the Seventh Circuit addressed the question of whether the district court properly entertained a declaratory judgment action Nucor, a steel manufacturer, filed against Aceros, a corporation that buys, sells, and processes steel. *See id.* at 577. Nucor filed its action in July 2001, one month after receiving a letter from Aceros describing Nucor's purported breach of contract and threatening to sue Nucor within sixty days under a Texas statute if Nucor did not pay Aceros' damages. *See id.* at 575. Aceros waited until March 1992, eight months after the filing of Nucor's action, before filing its state court action.

In the interim, Aceros filed a motion to dismiss Nucor's action. The district court denied Aceros' motion, explaining:

Here, another lawsuit between the parties involving identical issues has not been filed; yet, Aceros has clearly threatened suit against Nucor. Aceros' claim has ripened to a point where it could invoke a coercive remedy, but it has not done so. Aceros' assertion that it plans to bring suit is not enough. As memories fade, the facts become more difficult to determine. Accordingly, Nucor would be prejudiced by any delay. Nucor need not wait for Aceros to bring a coercive action. *Id.* at 578 (quoting District Court Order of 19 March, 1992).

On appeal, Aceros asserted that the district court sanctioned a "race to the courthouse," permitting Nucor's declaratory action to preempt its state court action. *Id.* Rejecting Aceros' argument, the Seventh Circuit declared that "[t]here simply was no race to the courthouse" in light of Aceros' eight-month delay in filing its action. *Id.* Consequently, Aceros was unable to demonstrate that its action "would be a better remedy, or that the declaratory action was being used merely for procedural fencing." *Id.*

Here, unlike *Nucor*, another lawsuit between the parties involving identical issues has been filed. M Credit argues that the Cadle Companies' lawsuit only seeks M Credit's performance of a *past* obligation to make a $25,000,000 loan while its action seeks a declaration that it has no *past* or *present* obligation to make a new $25,000,000 loan. However, the resolution of M Credit's action and the Cadle Companies' lawsuit both turn on the duration and scope of M Credit's obligations under the Proposal Letter and the Loan Agreement. That M Credit filed its declaratory action first does not give it a "right" to choose a forum.[4] *See Tempco*, 819 F.2d at 749-50. Indeed, M Credit may raise its claim as an affirmative defense or counterclaim to the Cadle Companies' lawsuit. *See Natural Gas Pipeline*, 750

---

[4]M Credit argues that it did not engage in improper forum shopping by filing its action in the Northern District of Illinois because jurisdiction and venue are proper in this Court. We are not entertaining a motion regarding jurisdiction or venue. Rather, we are considering the Cadle Companies' motion to dismiss. M Credit should address its arguments regarding venue in a motion to transfer filed in the Northern District of Ohio. *See Tempco*, 819 F.2d at 750; *see also Eli's Chicago Finest*, 23 F.Supp.2d at 909. Even if, as M Credit argues, the Northern District of Illinois is the appropriate venue for the resolution of the issues presented by the parties' suits, M Credit is not justified in filing a declaratory judgment action for purposes of securing venue in this Court. If that were not the case, "[t]he wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing . . . to choose a forum." *Id.* (quoting *American Automobile Ins. Co. v. Freundt*, 103 F.2d 613, 617 (7th Cir. 1939)).

7

F.Supp. at 315. To otherwise adjudicate M Credit's declaratory action would be to undermine the purposes of the Act and condone a "race to the courthouse."

M Credit denies that there was a "race to the courthouse," noting that the Cadle Companies did not file its lawsuit until nearly one month after M Credit filed its action before this Court. However, M Credit filed its declaratory judgment action before this Court on March 7, 2003, only three days after receiving the demand letter from the Cadle Companies. Thus, at the time M Credit filed its action, it knew that the Cadle Companies stood ready to file suit in the Northern District of Ohio. By filing first, M Credit attempted to deprive the Cadle Companies of the forum of its choice. The Cadle Companies' decision to file on April 4, 2003 leads us to conclude that a "race to the courthouse" existed between M Credit, a fast competitor, and the Cadle Companies, a slower competitor. We decline to reward M Credit for its victory in reaching the courthouse first. Instead, we acknowledge the Cadle Companies' choice of forum and dismiss M Credit's declaratory judgment action, thereby permitting the Cadle Companies' lawsuit "to proceed in the usual way." *Allendale Mut. Ins. Co.*, 10 F.3d at 431.

### III. CONCLUSION

For the foregoing reasons, we grant the Cadle Companies' motion to dismiss and deny M Credit's motion to enjoin prosecution of the Ohio action as moot. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 7/28/03